

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00143-CV

LARRY C. CABELKA                                              APPELLANT

V.

KELLY EUGENE SCHMALTZ, ERIC                                   APPELLEES
SCHMALTZ, AND KYLE
SCHMALTZ

----------

## FROM THE 97TH DISTRICT COURT OF ARCHER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Larry C. Cabelka appeals from the trial court's judgment ordering

that Appellee Kelly Eugene Schmaltz[2] recover from Cabelka damages of $2,000

---

[1]*See* Tex. R. App. P. 47.4.

[2]Schmaltz did not file a brief in this case, and neither did Eric Schmaltz or Kyle Schmaltz. Eric and Kyle are Kelly's sons. They did not appear at trial, and no judgment was rendered against them.

plus post-judgment interest and court costs. Because we hold that the evidence was sufficient to support the judgment, we affirm.

In 2006, Cabelka sued Schmaltz for breach of contract and conversion. He later amended his petition to add a claim for trespass. Schmaltz countersued for breach of contract, conversion, and fraud.

The case was tried to the bench in July 2009. In January 2013, the trial court signed a judgment that awarded Cabelka $18,000 in damages on his breach of contract claim, awarded Schmaltz $20,000 for the loss of the value of the tanker trailer, ordered Cabelka to pay Schmaltz the difference of $2,000, and denied all other relief. Cabelka now appeals.

Cabelka's first issue asks whether the trial court abused its discretion by failing to promptly dispose of the case. He argues that the trial court abused its discretion by failing to promptly rule after trial was held and therefore rendered an incorrect judgment.

The record does not reflect the reason for the delay between the trial and the date the judgment was signed. The clerk's record contains a December 31, 2012 letter from the trial court to the attorneys for the parties requesting them to prepare a proposed judgment in accordance with its decision as reflected in the letter. By a letter dated January 8, 2013, the attorney for the Schmaltzes submitted a proposed judgment. The trial court signed a judgment on January 22, 2013.

Cabelka candidly acknowledges in his brief that the only authority he could find on the question of how long a trial court may take to render a judgment is a canon of the code of judicial conduct stating that "[a] judge should dispose of all judicial matters promptly, efficiently[,] and fairly."[3] We agree that the long delay between the trial and the final judgment in this case is not ideal. But Cabelka does not make any argument about how he was harmed by the delay, other than the assertion that over time, one is apt to forget things.[4] And although the rules of civil procedure allow either party to submit a proposed judgment to the trial court, the record does not reflect that either party submitted a proposed judgment or moved for judgment at any time before the trial court's letter.[5] If Cabelka was concerned about the passage of time, he was free to take some step to spur the trial court into faster action. We overrule Cabelka's first issue.

Cabelka's second issue asks whether the trial court abused its discretion by disregarding undisputed evidence. Based on the content of his argument, we conclude that Cabelka challenges both the legal and factual sufficiency of the evidence on the ground that the trial court's finding of $20,000 as the value of a Polar tank trailer owned by Schmaltz is not supported by any evidence. Cabelka asserts that "the record shows multiple valuations of the Polar Tank Trailer at

---

[3] *See* Tex. Code Jud. Conduct, canon 3B(9), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B (West 2013).

[4] *See* Tex. R. App. P. 44.1.

[5] Tex. R. Civ. P. 305.

$10,000 but no where [sic] is it valued at $20,000" and that "[t]he only point in trial where a party attempted to put that value on the Polar Tank Trailer, it was objected to and the objection was sustained." And he further asserts that "the parties had previously agreed that the value of the Polar Tank Trailer was $10,000.00," "[b]oth parties had signed the document agreeing that was the price," and "[t]he price was never disputed in the record."

At trial, the parties agreed that in 2001, they agreed to a trade of various items of personal property and some real property owned by Schmaltz. The parties disagreed whether the parties had agreed to trade the tanker trailer for a combine trailer owned by Cabelka or whether the parties had agreed that Schmaltz would buy the combine trailer. They also disagreed about the value of the tanker trailer.

Cabelka and Schmaltz did not have a formal written contract containing the terms of their agreement to trade real property for personal property, but they did list several items on an invoice form and included a dollar amount next to each item on the list. This form was signed by both Cabelka and Schmaltz. The tanker trailer was listed on the document with the amount "$10,000" listed next to it. At trial, both parties gave testimony that the $10,000 did not accurately reflect the value of the tanker trailer. Schmaltz testified that it was worth between $15,000 and $20,000, while Cabelka testified that it was worth $9,000 at most.

Cabalka is correct that the invoice form lists a value for the tanker trailer at $10,000. And at one point during the trial, the trial court sustained Cabelka's

4

objection to Schmaltz's valuation testimony as nonresponsive. But that was not the only testimony about the tanker trailer's value. Schmaltz was later asked whether he agreed that the fair market value of the tanker trailer was $10,000, and he answered,

> A   No. The trailer valued between 15- and 20,000. [Cabelka] had come up with this amount so that the tax value of the house could come down because it appraised for over 135,000 at that time.

> Q   Did [Cabelka] ever say that in your presence?

> A   Yeah. He—yeah. And I agreed that it didn't matter, the dollar amount.

> Q   Didn't matter to you?

> A   No. It didn't matter to me.

> Q   And so the numbers that are placed beside each of those items, were those numbers that you came up with or [Cabelka] came up with?

> A   [Cabelka] came up with them.

This testimony is some evidence that Cabelka had written down the valuations on the invoice form for purposes of lowering the tax value of the real property and that the amounts were not necessarily a reflection of the actual fair market value of the items. It is also some evidence that the trailer has a fair market value of between $15,000 and $20,000. Cabelka does not argue that Schmaltz was not qualified to give an opinion as to the trailer's value, and he did not object to this testimony at trial.[6]  Having reviewed the record, and applying

---

[6] *See* Tex. R. App. P. 33.1.

5

the appropriate standards of review,[7] we cannot say that the evidence was insufficient to support trial court's judgment. We overrule Cabelka's second issue.

Having overruled both of Cabelka's issues, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  May 22, 2014

---

[7]*City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).