

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00435-CV

———————————————

IN THE INTEREST OF T.A., A CHILD

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 2012-50502-367

Before Kerr and Pittman, JJ., and Gonzalez, J.[1]
Memorandum Opinion by Justice Pittman

---

[1]The Honorable Ruben Gonzalez, Jr., Judge of the 432nd District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Texas Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

## MEMORANDUM OPINION

### INTRODUCTION

The crux of this infelicitous appeal is whether the trial court erred by including the sum of $37.37 per month to pay for a child's dental insurance coverage in a final order in a suit to modify the parent-child relationship. Ironically, the child's divorced parents do not disagree that the father was to pay the child's dental insurance or even that the current cost of the child's dental insurance is $37.37 per month, only whether the father was to be directly responsible for the insurance or was instead supposed to reimburse the mother for the cost of the insurance.[2] Although this court has serious concerns that this appeal is both a drain of the parties' resources and a waste of the taxpayers' time and money, for the reasons set forth below, we reverse the trial court's judgment and remand this case to the trial court for further proceedings.

---

[2]As this court reminded the parties at oral argument, the nature of this appeal brings to mind the sage advice Abraham Lincoln provided to new attorneys over 150 years ago:

> Discourage litigation. Persuade your neighbors to compromise whenever you can. Point out to them how the **nominal** winner is often a **real** loser; in fees, expenses, and waste of time. As a peace-maker; the lawyer has a superior opportunity of being a good man. There will still be business enough.

Abraham Lincoln, *Lincoln's Notes for a Law Lecture*, *in America's Lawyer-Presidents: From Law Office to Oval Office* 146–47 (Norman Gross ed., 2004) (emphasis in original); *cf.* Thomas Jefferson, *Autobiography* (1821), *reprinted in Thomas Jefferson: Writings* 53 (Merrill D. Peterson, ed., 1984) (It is the trade of lawyers "to question everything, yield nothing, and talk [or write] by the hour.").

BACKGROUND

## I. Mother and Father Divorce and Follow-Up with Enforcement and Modification Actions Related to Their Daughter.

The long journey to this appeal began six years ago, on February 13, 2013, when the trial court signed a final decree of divorce ending the marriage of Appellant J.A. (Father) and Appellee A.C. (Mother). Father and Mother had one child, T.A. (Daughter), who was almost two years old at the time of the divorce.

From the record, it appears that Mother and Father have engaged in continuous conflict over Daughter since their divorce. A year after the divorce was granted, on February 17, 2014, Father filed a motion for enforcement of the residency restriction against Mother; on July 21, 2015, he filed a first amended motion for enforcement of the residency restriction, for temporary restraining order, for modification, and for declaratory judgment; and Mother returned fire by filing an original counterpetition to modify the parent-child relationship a few months later on September 11, 2015.[3]

## II. Mother and Father Agree that Father Will Provide Dental Insurance for Daughter.

On October 27, 2015, the trial court held a bench trial on the Enforcement and Modification Actions. At the bench trial, the parties represented to the trial court that

---

[3]For simplicity, we refer to these actions collectively as the "Enforcement and Modification Actions."

they had reached an agreement as to all matters except for the drop-off and pick-up location for Daughter when the parents exchange possession. Before the parties presented testimony concerning their respective positions regarding the proposed drop-off and pick-up location, the trial court instructed them to have their agreement read into the record. The following exchange ensued:

| The Court: | So might as well get the agreements that you have out on the table now. |
|---|---|
| | So, Counsel, . . . do you want to call a witness or— |
| [Father's Attorney]: | Well— |
| [Mother's Attorney]: | (Overlapping) I'm happy to— |
| The Court: | —(overlapping) anybody going to recite it in the record? |
| [Father's Attorney]: | I was going to say, if we just read the— |
| The Court: | (Overlapping) Okay. **And, I'll say, listen carefully, because if something is left out or if a word is wrong in it, you need to be—bring that to the attention of the attorneys so that it is corrected. Because them reciting it in the record and you-all agreeing to it, it's pretty much going to ensure that your agreements will be the order of the Court.** Okay? So if something— |
| [Father]: | Yes, ma'am. |
| The Court: | —happens, just, I'll say, correct it for the attorneys. |
| [Mother]: | Yes, ma'am. |

[Emphasis added.]

Mother's attorney then proceeded to recite Mother and Father's agreement into the record. With regard to Daughter's dental insurance, Mother's attorney stated that Father's

> insurance enrollment period also opens up on November 1st. He has agreed to provide his insurance enrollment information to [Mother] so that they can review the coverages and, if it's available, add dental and vision coverage for the child because currently there's just medical coverage in place.
>
> [Father] will remain financially responsible for the health insurance.

Obviously, nothing in this agreement requires Father to reimburse Mother for Daughter's dental insurance. Neither Mother nor Father corrected Mother's attorney's recitation of the agreement in the record. In fact, both Mother and Father testified under oath that Mother's attorney had correctly recited their agreement into the record.[4]

### III. Combat Continues for Two More Years, and a Final Order Requiring Father to Reimburse Mother $37.37 a Month for Dental Insurance is Signed.

Despite the parties' "agreement" that was recited into the record and

---

[4]Whether the agreement between Mother and Father was ever reduced to writing is unknown. Certainly, if the agreement were reduced to writing it would have clarified much of the confusion in this matter and possibly alleviated the need for this appeal. In any event, if there was a written agreement, it is not a part of the appellate record.

confirmed by Mother and Father on October 27, 2015, the acrimonious hostilities continued. In December 2015, Mother filed a combined motion to compel and motion for sanctions, and in August 2017, she filed a combined motion to compel, motion to enter final order, and motion for sanctions, asking that Father be sanctioned for his failure to provide financial information in accordance with the parties' agreement. Almost two months later, on October 18, 2017—three years and eight months after the actions were initiated and almost two years after the bench trial—the trial court signed the final order in suit affecting parent-child relationship (Final Order).

The Final Order, which was "APPROVED AS TO FORM ONLY" by Mother's and Father's attorneys, included a paragraph covering dental insurance for Daughter (the Dental Insurance Reimbursement):

> IT IS FURTHER ORDERED THAT [Father] is ORDERED to pay to [Mother] 100% of the monthly cost of insuring the child with dental insurance, with the first payment due and payable on the first day of June, 2016, and a like payment on the same day each month thereafter in accordance with this order. At the time of the signing of this Order, the monthly dental insurance obligation for [Daughter] is $37.37. IT IS ORDERED that such reimbursement insurance payments shall be made by [Father] to [Mother] in monthly payments of $37.37 through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and then remitted by that agency to [Mother] for the support of the child.

Father did not file any post-judgment motions or otherwise object to the Final Order or the Dental Insurance Reimbursement before the trial court. However, whether the

Dental Insurance Reimbursement comports with the parties' agreement recited into the record at the October 27, 2015 bench trial is the crux of this appeal.

**IV.** **Father Appeals the Final Order's Requirement that He Reimburse Mother for Daughter's $37.37 Per Month Dental Insurance.**

Waiting until the last possible day to appeal, Father filed a notice of appeal challenging the Dental Insurance Reimbursement. In his brief, Father brings one issue with three parts, contending that the trial court erred in ordering him to reimburse Mother $37.37 for Daughter's dental insurance because (1) the October 27, 2015 agreement between the parties did not include an agreement that Father would reimburse Mother $37.37 per month for Daughter's dental insurance; (2) the October 18, 2017 Final Order was not an agreed order regarding the provision that Father would reimburse Mother $37.37 per month for Daughter's dental insurance; and (3) there is no evidence or insufficient evidence to support the Dental Insurance Reimbursement. Mother chose not to file a responsive brief. However, both parties appeared at oral argument on October 23, 2018. At oral argument, neither Mother nor Father disputed that Father agreed to be responsible for Daughter's dental insurance, only whether Father was to reimburse Mother for such coverage as part of his monthly child support obligation or instead cover Daughter's dental insurance through his own dental insurance plan.

## DISCUSSION

## I.     Standard of Review

We review the trial court's modification of orders governing child support for an abuse of discretion.[5]  *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see In re A.B.H.*, 266 S.W.3d 596, 601 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g) (applying standard); *see also In re L.R.S.*, No. 02-09-00244-CV, 2011 WL 754406, at *4–6 (Tex. App.—Fort Worth Mar. 2011, no pet.) (mem. op.) (applying abuse-of-discretion standard to issues related to children's dental insurance in appeal of modification and enforcement order).  A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles.  *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).  A trial court also abuses its discretion when it does not analyze or apply the law properly.  *Iliff*, 339 S.W.3d at 78.  Legal and factual sufficiency are not independent grounds of error in modification cases, but they are relevant factors in deciding whether the trial court abused its discretion.  *T.D.C.*, 91 S.W.3d at 872.

---

[5]For suits affecting the parent-child relationship filed on or after September 1, 2018, the Texas Legislature has expressly stated that a parent's child-support obligation includes the costs of dental insurance.  *See* Tex. Fam. Code Ann. § 154.183(a)(2).

Evidence is legally insufficient if (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In comparison, when we review the factual sufficiency of the evidence, we will set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion and (2) did the trial court err in its application of discretion? *T.D.C.*, 91 S.W.3d at 872.

**II. There is No Evidence Supporting the Trial Court's Decision to Order Father to Reimburse Mother $37.37 Per Month for Daughter's Dental Insurance.**

In the third subpart of Father's issue on appeal, he argues that there is no evidence, or alternatively, insufficient evidence supporting the trial court's findings that he must reimburse Mother $37.37 per month for Daughter's dental insurance. To resolve this issue, we must determine whether, based on the elicited evidence, the trial court abused its discretion. *See In re H.S.*, No. 02-17-00379-CV, 2018 WL 5832120, at *6 (Tex. App.—Fort Worth Nov. 8, 2018, no pet.) (mem. op.).

We thoroughly examined the record in this case and conclude that Father's no-evidence complaint has merit. At the October 27, 2015 bench trial and at oral argument before this court, the parties conceded that Father was responsible for Daughter's dental insurance. However, no evidence in the record suggests or supports the finding that Father agreed to reimburse Mother for such coverage or that the amount of such coverage was $37.37 per month, as the Final Order reflects. Accordingly, no evidence supports the trial court's finding that Father reimburse Mother the sum of $37.37 per month for Daughter's dental insurance. As a result, we hold, on this record, that the trial court abused its discretion by including the Dental Insurance Reimbursement in the Final Order.

We sustain the third subpart of Father's issue on appeal, which is dispositive, and do not reach the first two subparts. *See* Tex. R. App. P. 47.1.

## CONCLUSION

It is with great consternation that, having sustained the third, dispositive subpart of Father's sole issue, we reverse the trial court's Final Order with regard to the Dental Insurance Reimbursement and remand this case to the trial court to conduct further proceedings and render a final order consistent with the evidence or the parties' agreement.[6] *See* Tex. R. App. P. 43.2(d), 43.3.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered: May 16, 2019

---

[6]On remand, we are confident that Mother, Father, and their respective attorneys will be able to communicate promptly and effectively to resolve these prolonged proceedings with a minimum of judicial involvement. *Cf. John F. Kennedy*, *Great Quotes from Great Leaders* 87 (Peggy Anderson comp., 1990) ("Let us never negotiate out of fear but let us never fear to negotiate."). In doing so, the attorneys are encouraged to remember their various obligations as members of the Texas Bar, such as, "I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice"; "I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party"; and "I will not quarrel over matters of form or style, but I will concentrate on matters of substance." *Texas Lawyer's Creed—A Mandate for Professionalism*, *reprinted in Texas Rules of Court* 735–37 (West 2018); *see also Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 286 (N.D. Tex. 1988) (en banc) ("We attempt to carry out our responsibilities in the most prompt and efficient manner, recognizing that justice delayed, and justice obtained at excessive cost, is often justice denied.").

11